CARL W. ECKLUND, ADMINISTRATOR, V. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.

FILED DECEMBER 9, 1897.    No. 7381.

1. Negligence: DEATH OF EMPLOYE: DIRECTING VERDICT FOR DEFEND-ANT. Where in an action to recover for the alleged negligent acts of the defendant the undisputed evidence, when construed most favorably to the plaintiff, is sufficient to warrant the inference of negligence, it is the duty of the court to direct a verdict for the defendant.

2. ——: ——: ——: EVIDENCE. *Held*, from a consideration of the evidence, that the plaintiff was not entitled to recover on the cause of action alleged and that the district court did not err in directing a verdict for the defendant.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J.    *Affirmed.*

*Ed P. Smith* and *J. B. Sheean*, for plaintiff in error.

*William B. Sterling* and *Benjamin T. White, contra.*

POST, C. J.

This was an action below in the district court for Douglas county by the plaintiff in error as administrator of the estate of Olaus E. Olson, deceased, suing to recover on account of the negligence of the defendant, the Chicago, St. Paul, Minneapolis & Omaha Railway Company, resulting, as alleged, in the death of said deceased. There was a trial below, which resulted in a verdict for the defendant company, under the direction of the court, upon which judgment was subsequently entered, and which is presented for review by means of this proceeding.

The facts essential to an understanding of the controlling question are as follows: On the morning of October 11, 1892, a mixed train, consisting of fifteen cars, had been made up by the defendant company and was standing at its depot platform in the city of Omaha pre-

paratory to its departure for the north, in which direction it was headed. Attached to said train were two locomotives, or engines, as described in the record in the order here mentioned, viz., No. 106, in charge of engineer Clark, and No. 105, in charge of engineer Harrington. While said train was awaiting the signal to start, the deceased, who was employed as an inspector and repairer of cars and engines, approached from the south or rear end of the train, and directed engineer Harrington to apply the air for the purpose of ascertaining if it worked satisfactorily throughout the train. Being satisfied apparently with the test made under his direction, the deceased announced, "All right." Shortly thereafter he said, addressing engineer Clark, who stood on the ground or platform near his cab door, "Be careful, I have some work to do back here," without indicating in any manner the nature of the work referred to, or where it was to be done. Clark, who denies hearing the cautionary direction of the deceased, within a minute or two thereafter, stepped back to a point opposite Harrington's engine and requested the latter to again apply the air, which was immediately done. Deceased had, it appears, without further warning to Clark or Harrington, and without the knowledge of either, gone beneath the second car from the engine, where he was injured by the movement of the air brake machinery, his head being struck or caught by the levers, and which, as contended, was the proximate cause of his death. It is conclusively shown by the evidence that the car in question, to-wit, a Burton horse car, was equipped with the usual appliances for cutting out or disconnecting the air from the piston or lever employed in the operation of the air brake. Such appliances consisted in a stop-cock, or cut-off, under the car, and accessible from the nearest side without going between the rails of the track, also an angle-cock at either end of the car, so that deceased might without difficulty, before going under the car, have protected himself against the possibility of danger from the application of the air. It further ap-

pears from the testimony of plaintiff's witnesses, as well as from those of the defendant company, that it is the duty of an inspector before going under the car to which an engine is attached to shut off the air.

The evidence adduced, so far as it relates to the duty of deceased upon going under the car, is fairly illustrated by the cross-examination of J. R. Lawson, a practical car inspector, who was called as a witness in behalf of the plaintiff, to-wit:

Q. I am asking you now as to this Burton car,—whether it had such a device [referring to a stop-cock]?

A. There was a stop-cock on the car.

Q. What was the object of that stop-cock,—what was it placed there for?

A. It was put there so you can cut the air out on that particular car.

Q. What do you mean by cutting the air out?

A. So that the air cannot be used on that particular car.

Q. State whether or not that is placed there for the purpose of rendering it safe to the inspector when he goes under there by turning off the air.

A. Yes, sir; it is for that purpose.

Q. If the car inspector had given the direction to the engineer or engineers in regard to the working of the air and notified the engineer or engineers that he was about to go under the car, what then, if anything, would be the duty of the inspector before going under the car?

A. It would be the duty of the inspector every time to cut off, or turn, this stop-cock and cut out the air on the car he was going under to repair the brake.

Q. If he did that what would be the effect upon that car?

A. The air could not be used on that particular car.

The judgment complained of is defended upon three grounds, viz.: (1) The evidence fails to disclose any actionable negligence on the part of the defendant company. (2) Deceased was guilty of negligence in failing to shut off

the air before going under the car. (3) The alleged
negligent act was that of a fellow-servant while engaged
with deceased in the discharge of a joint duty with
respect to the train of defendant company.

It will, in view of the conclusion we are constrained to
adopt respecting the first proposition, be unnecessary to
examine the others, except in so far as the alleged neg-
ligent acts of the defendant may incidentally involve the
question of contributory negligence on the part of the
deceased. We assume for the purpose of this discussion,
as doubtless did the district court, that the cautionary
remark of the deceased was heard by engineer Clark,
notwithstanding the explicit denial of the latter. Such
direction, it is argued, amounted to notice that deceased
was about to go under the cars or to engage in work
thereon equally perilous, and that negligence is, in a
legal sense, fairly inferable from the act of applying the
air under the circumstances in evidence. But the vice
in the reasoning thus employed lies in the omission there-
from of any reference to the fact that deceased had
already signified his satisfaction with the working of the
air brake machinery. The engineers might, and we think
naturally would, assume from the remark of the deceased
at the conclusion of the test made under his direction
that no further work was necessary upon the air brake
equipment, and that the subsequent caution, "Be careful,
I have some work to do back here," referred to another
of the many duties with which he was charged in his
capacity as car inspector. The utmost that can be
claimed for that direction is, in view of the previous
announcement, that it indicated an intention on the part
of the deceased to inspect the other machinery or equip-
ments of the cars before the train was set in motion.
Such is not only the logical and necessary conclusion
from the admitted facts, but is strongly supported by the
testimony of the plaintiff's witnesses. For instance, Mr.
Turner, a practical inspector, who was called in behalf
of the plaintiff, testified on cross-examination as follows:

Q. Is it very dangerous to go under there without notice?

A. Yes, sir.

Q. This notice that is given to the engineer, then, is to prevent him from moving the train?

A. Yes, sir.

Q. I understand you to say that it is the duty of the car inspector to notify the engineer having charge of the train that he is going under there that the engineer may not move the train?

A. That he may not move the car that he is operating or working under.

Q. And that order and direction does not go further than that, simply to the movement of the train?

A. That is all.

And on his redirect examination said witness testified:

Q. "By moving the train" you mean in moving the air brakes as well as moving the whole car?

A. Oh, no.

Q. How is that?

A. I do not mean it that way, just simply moving the train.

We are not unmindful of the rule often asserted in this class of cases that where from the undisputed facts different minds may reasonably draw different inferences touching point at issue, the question of negligence is one of fact for the consideration of the jury. We are, however, as already intimated, unable to perceive that the inference of negligence in the testing by the engineer of the air brake machinery is, upon the evidence adduced, warrantable even upon plaintiff's theory of the facts. It follows that the judgment is right and should be

AFFIRMED.